UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | | |
|---|---|---|
| BILL RHODES | ) | |
| and THE GEORGE AND JUANITA | ) | |
| SMITH FAMILY, LLC, | ) | Case No. 6:25-cv-00228-GFVT |
| | ) | |
| Plaintiffs, | ) | |
| | ) | **MEMORANDUM OPINION** |
| V. | ) | **&** |
| | ) | **ORDER** |
| KENNETH WILLIAMSON and | ) | |
| KNOX COUNTY, KENTUCKY, | ) | |
| | | |
| Defendants. | | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is before the Court on the Defendants' Motions to Dismiss the Plaintiffs'

Complaint.  [R. 5; R. 6.]  For the reasons that follow the Court will **DENY** Defendant Knox

County's Motion **[R. 5]** and **GRANT** Defendant Kenneth Williamson's Motion.  **[R. 6.]**

**I**

For the past several years, Plaintiffs Bill Rhodes and the George and Juanita Smith

Family have been in a dispute with Defendants Kenneth Williamson and Knox County regarding

the status of a portion of Miles Cemetery Road, which is located in the Swan Pond area of Knox

County.[1]  [R. 1.]  Plaintiffs are two homeowners who claim that they and their predecessors have

accessed their land by way of Miles Cemetery Road for decades.  *Id.* at 2.  Defendant

---

[1] The facts contained in this Memorandum Opinion & Order are primarily based on the allegations in the Plaintiffs' Complaint.  However, the Court has also considered the filings from the underlying Knox Circuit Court action between these Parties. The parties are in agreement that it is well settled when a court considers a motion to dismiss, "a court may take judicial notice of other court proceedings without converting the motion into one for summary judgment." *Buck v. Thomas M. Cooley Law Sch.*, 597 F.3d 812, 816 (6th Cir. 2010).

Williamson owns a property on Miles Cemetery Road, and Plaintiffs claim that in 2020, Williamson attended a fiscal court meeting and requested that the county road designation of Miles Cemetery Road terminate at his residence, thus cutting off the Plaintiffs' access to their properties. *Id.* at 2. The Plaintiffs claim that in a collusive effort between Williamson and Knox County, Williamson's request was granted. *Id.* at 2-3. Then, in 2022, the Plaintiffs claim that Williamson erected a fence and obstructed the Road, cutting off the Plaintiffs' access to their properties. *Id.* at 3.

Plaintiffs brought separate actions, which were later consolidated, against Defendant Knox County and Defendant Williamson, in Knox Circuit Court. *Id.* In their state court Complaint, the Plaintiffs alleged that the actions of the Defendants denied them access to their respective properties. [R. 5-3 at 2.] To that end, the Plaintiffs sought injunctive relief compelling Williamson to "remove the barricade" on the Road and prevent him from "interfering in any manner" with the Plaintiffs' access to their properties. *Id.* at 3. Further, Plaintiffs sought injunctive relief compelling Knox County to "take appropriate action to permit access" to the Plaintiffs' properties. *Id.* Plaintiffs also sought monetary damages from both Defendants. *Id.*

On February 3, 2025, Knox Circuit Court granted summary judgment in favor of Knox County, finding that County Road 1219, the county road designation of Miles Cemetery Road, terminated at the white picket fence which Williamson had erected. [R. 5-5 at 3-4.] Further, the Knox Circuit Court found that sovereign immunity protected Knox County and accordingly dismissed Knox County from the litigation. *Id.* at 5. The Plaintiffs did not seek appellate review of that decision. The Knox Circuit Court also granted summary judgment in favor of Williamson regarding the county road designation of Miles Cemetery Road, but allowed the Plaintiffs leave to amend their Complaint and assert a prescriptive easement claim against Williamson. [R. 6-2.]

2

To this Court's knowledge, the prescriptive easement claim against Williamson remains pending in Knox Circuit Court.

The subject matter of the present federal Complaint relates to the Defendants' actions during the state court litigation. The case against Williamson was set to proceed to trial on April 23, 2025. [R. 5-6 at 2.] The presiding Knox Circuit Court judge, Judge Gregory Lay, planned to conduct a site inspection of the Road and the parties' properties in advance of the trial, on April 22, 2025. *Id.* However, on April 18, 2025, Plaintiffs learned that Knox County had repaved the road and Williamson had bulldozed a pathway to the Plaintiffs' properties to create the appearance of access. *Id.* The Plaintiffs allege that these actions resulted from a concerted effort between Williamson and Knox County officials to "alter the landscape" of Williamson's property to "skewer the Court's perception of the 'layout of the land.'" *Id.* at 2-3.

In light of this discovery, Plaintiffs moved to continue trial and hold the matter in abeyance. *Id.* Plaintiffs claim that these actions prejudiced their ability to conduct discovery as to why fresh blacktop was placed less than one week before trial and before Judge Lay's planned site inspection. *Id.* at 3-4. Further, Plaintiffs claim that Knox County and Williamson opened themselves up to criminal prosecution by tampering with physical evidence, and Knox County has opened itself up to being brought back into the state court action if it paved the road for the benefit of or at the behest of Williamson. *Id.* at 4. From the record before this Court, it is not clear what action, if any, the Knox Circuit Court took in response to the Plaintiffs' allegations.

On December 16, 2025, Plaintiffs brought the instant action against Defendants Knox County and Kenneth Williamson, seeking injunctive and monetary relief. [R. 1.] Plaintiffs bring an equal protection class of one claim against both Defendants and a *Monell* claim against Knox County, under 42 U.S.C. §1983. *Id.* at 5. Plaintiffs also bring a claim under 42 U.S.C. §1985(3)

3

for conspiracy to deny equal protection. *Id.* at 5-6. Both Defendants separately moved to dismiss the Complaint. [R. 5; R. 6.] Defendant Knox County asserts that Plaintiffs' claims are barred by *res judicata* and otherwise not properly before this Court under the *Rooker-Feldman* doctrine. [R. 5.] Defendant Kenneth Williamson asserts that the Plaintiffs have failed to state a claim against him on various grounds. [R. 6.] Both motions have been fully briefed and the motions are ripe for review.

**II**

**A**

The Court first considers Knox County's Motion. Knox County moves for dismissal of the Plaintiffs' Complaint on two grounds. First, Knox County asserts that Plaintiffs' claims are barred by *res judicata* and collateral estoppel and thus fail to state a claim upon which relief can be granted. [R. 5-1 at 7-9.] Second, Knox County contends that Plaintiffs' Complaint is barred by the *Rooker-Feldman* doctrine, thus depriving the Court of subject matter jurisdiction. *Id.* at 9-10.

Rule 12 of the Federal Rules of Civil Procedure provides the grounds upon which a Defendant may move to dismiss a claim. Relevant here are Rule 12(b)(1) and Rule 12(b)(6). Under Rule 12(b)(1), a Defendant may move to dismiss a claim for lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). Under Rule 12(b)(6), a Defendant may move for dismissal for "failure to state a claim upon which relief may be granted." Fed. R. Civ. P. 12(b)(6). When a Court considers motions to dismiss under Rule 12(b)(1) and 12(b)(6), the Court is "bound to consider the 12(b)(1) motion first, since the Rule 12(b)(6) challenge becomes moot if [the] court lacks subject matter jurisdiction." *Moir v. Greater Cleveland Reg'l Transit Auth.*, 895 F.2d 266, 269 (6th Cir. 1999).

4

**1**

By moving to dismiss under Rule 12(b)(1), Knox County challenges this Court's power to hear this case. When jurisdiction is challenged under Rule 12(b)(1), the burden is on the Plaintiffs to demonstrate that jurisdiction exists. *RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1134 (6th Cir. 1996). In answering this question, the Court is "empowered to resolve factual disputes" and need not presume that either party's factual allegations are true. *Id.*

Knox County asserts that the *Rooker-Feldman* doctrine deprives the Court of jurisdiction to hear this case. [R. 5-1 at 9-10.] In essence, the *Rooker-Feldma*n doctrine precludes this Court from exercising jurisdiction over any action that constitutes a *de facto* appeal from the decision of a state court because only the United States Supreme Court has jurisdiction to hear an appeal from a state court. *See Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923); *D.C. Court of Appeals v. Feldman*, 460 U.S. 462 (1983). In *Exxon Mobil Corp. v. Saudi Basic Indus. Corp,*, the United States Supreme Court explained:

> The *Rooker-Feldman* doctrine. . .is confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments. *Rooker-Feldman* does not otherwise override or supplant preclusion doctrine or augment the circumscribed doctrines that allow federal courts to stay or dismiss proceedings in deference to state-court actions.

544 U.S. 280, 287-88 (2005).

The Court further explained that "[i]f a federal plaintiff 'present[s] some independent claim, albeit one that denies a legal conclusion that a state court has reached in a case to which he was a party, . . . then there is jurisdiction and state law determines whether the defendant prevails under principles of preclusion.'" *Id.* at 293 (quoting *GASH Assocs. v. Rosemont*, 995

F.2d 726, 728 (7th Cir. 1993).  In essence, the doctrine only applies where the prior state court judgment is the source of the injury complained of in the subsequent federal action.  *Id.*

The Sixth Circuit has noted that the scope of *Rooker-Feldman* has been tightened in the wake of *Exxon Mobil* and distinguishes "between plaintiffs who bring an impermissible attack on a state court judgment—situations in which *Rooker-Feldman* applies—and plaintiffs who assert independent claims before the district court—situations in which *Rooker-Feldman* does not apply."  *Kovacic v. Cuyahoga Cnty. Dep't of Children & Family Servs.*, 606 F.3d 301, 309 (6th Cir. 2010) (citations omitted).  Accordingly, 'the pertinent inquiry after *Exxon* is whether the 'source of the injury' upon which plaintiff bases his federal claim is the state court judgment, not simply whether the injury complained of is 'inextricably intertwined' with the state-court judgment."  *Id.* (citing *McCormick v. Braverman*, 451 F.3d 382, 394-95 (6th Cir. 2006)).

To that end, Courts apply the *Rooker-Feldman* doctrine in two categories of cases: "(1) cases that constitute a direct attack on the substance of the state court opinion, and (2) cases that challenge the procedures by which a state court arrived at its decision."  *Anderson v. Charter Twp. of Ypsilanti*, 266 F.3d 487, 493 (6th Cir. 2001) (citations omitted).  However, the doctrine "is not a panacea to be applied whenever state court decisions and federal court decisions potentially or actually overlap."  *McCormick¸* 451 F.3d at 395.  On the contrary, the doctrine is confined to cases in which "a plaintiff asserts before a federal district court that a state court judgment itself was unconstitutional or in violation of federal law."  *Id.*

Against this backdrop, *Rooker-Feldman* clearly does not bar this Court from hearing the Plaintiffs' claims against Knox County because the Plaintiffs are not asking this Court to engage in appellate review of a state court judgment.  With respect to the Plaintiffs' claims against Knox County, the Knox Circuit Court held that the county road designation of Miles Cemetery Road

6

terminates at Williamson's property, specifically at his white picket fence. [R. 5-5 at 3.] The Knox Circuit Court also held that Plaintiffs' claims against Knox County were barred by sovereign immunity. *Id.* at 5. Although the Plaintiffs do not necessarily agree with the conclusion of the Knox Circuit Court, and indicate as much in their Complaint, they do not ask this Court to review or reject the judgment of the Knox Circuit Court. *See Brown v. First Nat. Mtg. Corp.*, 206 F. App'x 436, 439 (6th Cir. 2006) ("[A] complaint in which the plaintiff contends he was injured by the defendants, rather than by the state court decision itself, is not barred by *Rooker-Feldman*, even if relief is predicated on denying the legal conclusion reached by the state court.").[2] In this way, the Plaintiffs do not bring a "*de facto* appeal" of the Knox Circuit Court judgment.

Further, as a matter of logic, the Knox Circuit Court judgment cannot provide the source of the Plaintiffs' injury because the judgment predates the Plaintiffs' alleged injury altogether. The conduct of which the Plaintiffs now complain—Knox County allegedly paving the Road the day prior to Judge Lay's planned site inspection—occurred after the Knox Circuit Court dismissed Knox County from the action. [R. 1 at 3-4.] Thus, in challenging conduct that did not even factor into the Knox's Circuit Court's analysis, the Plaintiffs necessarily do not challenge the constitutionality of the state court judgment. *Powers v. Hamilton Cnty. Pub. Def. Comm'n*, 501 F.3d 592, 606 (6th Cir. 2007) ("Assertions of injury that do not implicate state-court judgment are beyond the purview of the *Rooker-Feldman* doctrine."). Even if some of the conduct the Plaintiffs claim arises to a violation of their rights occurred during the state court

---

[2] To that end, the Court can quickly dispose of Knox County's argument that the Plaintiffs' "true intent" is reflected by the Plaintiffs' reference to the Road as a "disputed" road segment. [R. 9 at 1.] Further, Knox Couty has not provided any authority to suggest that the Plaintiffs' intent is of any consequence in the *Rooker-Feldman* analysis. *See In re Thomas*, 565 B.R. 856, 869 n. 6 (W.D. Tenn. 2017) ("The Rooker-Feldman Doctrine is a federal doctrine that focuses on the courts rather than the parties.").

7

proceedings, "*Rooker-Feldman* does not bar a federal-court challenge to an individual's improper conduct during a prior state court proceeding." *Pittman v. Cuyahoga Cnty. Dep't of Children & Family Servs.*, 241 F. App'x 285, 288 (6th Cir. 2007).

While *Rooker-Feldman* has been said to be "a combination of the abstention and *res judicata* doctrines," it is a jurisdictional doctrine, at its core. *Brown*, 206 F. App'x at 439. At bottom, the Plaintiffs allege that the Defendants' conduct, rather than the Knox Circuit Court judgment, forms the basis of their injury. The Court therefore finds that *Rooker-Feldman* doctrine does not apply. However, the Court must next consider whether—and to what extent— the state court judgments should be given preclusive effect. *See Exxon*, 544 U.S. at 293 ("Disposition of the federal action, once the state-court adjudication is complete, would be governed by preclusion law."). As such, the Court turns to the relevant preclusion doctrines.

**2**

As a separate grounds for dismissal, Knox County further asserts that the Plaintiffs' claims are barred by *res judicata* and collateral estoppel, also referred to as claim preclusion and issue preclusion.[3] [R. 5 at 1.] In essence, these preclusion doctrines prevent claims and issues from being relitigated following a final adjudication on the merits. *See Parklane Hosiery Co. v. Shore¸* 439 U.S. 322, 326-27 (1979). Issue preclusion refers to the effect of a prior judgment which actually litigated and decided the issues presently before the Court, while claim preclusion refers to the effect of claims that could have and should have been raised in a previous litigation. *Lucky Brand Dungarees, Inc. v. Marcel Fashions Grp., Inc.*, 590 U.S. 405, 411-412 (2020)

---

[3] The Supreme Court has expressed a preference for using the terms "claim preclusion" and "issue preclusion" rather than "*res judicata*," as "*res judicata*" has been discussed as encompassing both claim and issue preclusion, at times, and as only encompassing claim preclusion, at others. *See Migra v. Warrant City School Dist. Bd of Educ.*, 465 U.S. 75, 77 n. 1 (1984). To avoiding conflating the principles of these doctrines, the Court will address them separately and refer to them in accordance with the Supreme Court's stated preference.

(citations omitted).  Although Knox County does not distinguish between these concepts in its motion, it does clearly assert both theories as grounds for dismissing the Plaintiffs' Complaint. [*See* R. 5-1 at 7-9.]

Beginning first with claim preclusion, to bar a subsequent action on claim preclusion grounds: (1) "there must be identity of parties," (2) "there must be identity of the two causes of action," (3) and "the action must be decided upon its merits."  *Ventas, Inc. v. HCP, Inc.*, 647 F.3d 291, 304 (6th Cir. 2011) (quoting *Newman v. Newman*, 451 S.W.2d 417, 419 (Ky. 1970)). Notably, claim preclusion bars not only those claims that were brought in a prior action, but also "claims that could have been brought in the former action."  *4th Leaf, LLC v. City of Grayson*, 425 F.Supp.3d 810, 821 (E.D. Ky. 2019) (quoting *Miller v. Admin. Off. of Courts*, 361 S.W.3d 867, 873 (Ky. 2011)).  The party asserting claim preclusion bears the burden of proving the foregoing elements.  *Sanders Confectionary Prods. v. Heller Fin., Inc.*, 973 F.2d 474, 480 (6th Cir. 1992)).

In the instant case, although identity of the parties certainly exists, as the Plaintiffs and Knox County were parties to the action in Knox Circuit Court, claim preclusion does not bar the Plaintiffs' claims against Knox County.  This is because the claims asserted in this Court were not, and could not have been, asserted in the prior litigation.  The crux of the Plaintiffs' claims before this Court concerns the paving of Miles Cemetery Road immediately prior to Judge Lay's planned site inspection.  [R. 1-1 at 5.]  The paving occurred after the Knox Circuit Court granted summary judgment regarding the bounds of the county road designation and dismissed Knox County from the action.  Of course, "[a] question cannot be held to have been adjudged before an issue on the subject could possibly have arisen."  *Whole Woman's Health v. Hellerstedt*, 579 U.S. 582, 601 (2012) (quoting *Third Nat. Bank of Louisville v. Stone*, 174 U.S. 432, 434 (1899)).

9

Consequently, whether this paving deprived the Plaintiffs of certain rights could not have been litigated in the prior action and claim preclusion does not apply to the instant case.

In its motion, Knox County asks the Court to analyze whether the Plaintiffs' previous and current claims arise from a "common nucleus of operative fact," such that identity of the claims exists. [R. 5 at 8.] However, this analysis would be inapposite because the factual predicate for the Plaintiffs' current claims did not exist when they litigated their previous lawsuit. *See Springs v. U.S. Dep't of Treasury*, 567 F. App'x 438, 445 (6th Cir. 2014) (quoting *Curtis v. Citibank, N.A.*, 226 F.3d 133, 139 (2nd Cir. 2000)) ("While claim preclusion bars relitigation of the events underlying a previous judgment, it does not preclude litigation of events arising after the filing of the complaint that formed the basis of the first lawsuit."). Thus, because the basis for the Plaintiffs' claim did not yet exist when they filed their complaint in Knox Circuit Court, claim preclusion does not bar their instant claims.

Turning next to issue preclusion, this doctrine bars issues from being relitigated when the issue has been actually litigated and necessarily decided in a prior proceeding. *See Epps Chevrolet Co. v. Nissan North America, Inc.*, 99 F.Supp.3d 692, 701 (E.D. Ky. 2015) (quoting *Moore v. Cabinet for Human Res.*, 954 S.W.2d 317, 319 (Ky. 1997)). An issue is "actually litigated" if it has "been put into issue by the complaint, submitted to the trier of fact, and determined by the trier." *Peterson v. Johnson*, 714 F.3d 905, 914 (6th Cir. 2013) (citing *Keywell & Rosenfeld v. Bithell*, 657 N.W.2d 759, 783 n. 49 (2002)). An issue is "'necessarily decided' if its determination was necessary to support the judgment entered in the prior proceeding." *NLRB v. Master Slack and/or Master Trousers Corp.*, 773 F.2d 77, 81 (6th Cir. 1985) (citing 18 Wright, Miller & Cooper, *Federal Practice & Procedure* § 4421, p. 192).

10

Knox County asserts that in order for the Plaintiffs to succeed on their equal protection claim, they must show that Miles Cemetery Road provides ingress and egress onto their property. [R. 5-1 at 8-9.]  Thus, Knox County contends that because the status of the Road has already been decided in Knox Circuit Court, issue preclusion bars the Plaintiffs from relitigating this issue. *Id.*  While the Court agrees that the Plaintiffs cannot seek to relitigate the status of the Road in this Court, as that issue has been actually litigated and decided previously, the Plaintiffs' equal protection claims in this Court present new issues that were not litigated nor decided in Knox Circuit Court.

As noted above, the instant case—and specifically the equal protection claims—are predicated on a set of facts that occurred after Knox County's dismissal from the prior suit. Whether Knox County violated the Plaintiffs' equal protection rights by paving the Road could not have been actually litigated and decided by a trier of fact, when that set of facts has not been previously submitted to a trier of fact.[4]  Further, Knox County does not explain how the Plaintiffs' equal protection claim must fail if they cannot prove that the county road designation extends to their property, other that asserting that "Plaintiffs' equal protection claims in this case are based upon their supposed property rights." [R. 5-1 at 8.]  Rather, Knox County merely asserts that the Plaintiffs "must show that the Road provides ingress and egress to their property," without any citation to authority or explanation as to why that is the case. *Id.* at 8-9. At this stage it is Knox County's burden to demonstrate that the Plaintiffs have failed to state a claim, not the Plaintiffs burden to demonstrate that they have stated a claim for relief. *Bangura v. Hansen*, 434 F.3d 487, 498 (6th Cir. 2006).  Knox County falls well short of its burden with its

---

[4] In Reply, Knox County appears to suggest that because the Plaintiffs moved to continue the trial date in Knox Circuit Court following the paving that now forms the basis of their claims, these issues have already been litigated. [R. 9 at 2-3.]  However, Knox County does not, and cannot, assert that submitting an issue as grounds to continue a trial date is tantamount to actually litigating and deciding the issue.

11

conclusory statements, and thus, neither claim or issue preclusion bar the Plaintiffs' claims in this matter.

**3**

Although Knox County premised their Motion to Dismiss solely on preclusion and *Rooker-Feldman* grounds, in Reply, Knox County advances several further arguments for dismissing the Plaintiffs' Complaint.  [*See* R. 9 at 3-5.]  "Generally, new arguments or issues are waived when they are raised for the first time in a reply brief."  *Frank v. U.S. Food & Drug Admin.*, 998 F.Supp.2d 596, 602 (E.D. Mich 2014) (citing *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 553 (6th Cir. 2008)).  The Sixth Circuit has consistently held that replies "do not provide the moving party with an opportunity to present yet another issue for the court's consideration."  *Flowers¸* 513 F.3d at 553 (quoting *Novosteel SA v. U.S., Bethlehem Steel Corp.*, 284 F.3d 1261, 1274 (Fed. Cir. 2002)).  However, because the arguments raised by Knox County do not warrant dismissal, the Court will briefly address Knox County's additional arguments.

Knox County spends much of its Reply contending that the Plaintiffs have failed to state a claim for "civil conspiracy."  [R. 9 at 3.]  Knox County then provides the elements for a civil conspiracy claim under 42 U.S.C. § 1983 and argues that the Plaintiffs have failed to plausibly allege facts that would give rise to a civil conspiracy claim.  *Id.* at 3-4.  However, the Plaintiffs do not appear to bring a civil conspiracy claim under 42 U.S.C. § 1983.[5]  The Plaintiffs bring three separate claims against Defendant Knox County, two of which arise under § 1983 and one that arises under §1985(3).  [R. 1 at 5-6.]  The claims brought under § 1983 allege that the

---

[5] The Plaintiffs do assert a conspiracy theory of liability insofar as they seek to attribute Williamson's actions to state action, discussed *infra* Part II(B)(1)(a), but do not bring it as a separate claim. At any rate, courts in this Circuit have held that "a §1983 civil conspiracy by itself does not constitute a separate cause of action," but rather a means of imposing liability on each of the Defendants for the tortious acts of others. *Estate of Leeper v. CoreCivic, Inc.*, 797 F.Supp.3d 797, 813 (M.D. Tenn. 2025) (quoting *Quezergue v. Gunn*, 2022 WL 1217237, at *4 (M.D. Tenn. Apr. 25, 2022)).

12

Defendants denied the Plaintiffs equal protection, asserting a "class of one" theory, as well as a *Monell* claim against Knox County only. *Id.* The Plaintiffs do bring a conspiracy claim, but they bring a claim for conspiracy to deny equal protection under § 1985(3), not a claim for civil conspiracy under §1983. *Id.*

Knox County does not even mention §1985(3), so the Court cannot make any argument on its behalf. *See e.g. Anew Optics, Inc. v. Acorn Indus., Inc.*, 2019 WL 3849813, at \*2 (E.D. Tenn. July 12, 2016) ("The Court will not research and make the defendant's argument for it"); see also *Judge v. Quinn*, 612 F.3d 537, 557 (7th Cir. 2010) ("[I]t is not the obligation of this court to research and construct legal arguments open to parties, especially when they are represented by counsel."). The remainder of Knox County's Reply merely recites the standard for *Monell* liability and contends that the Plaintiffs have not met this standard. Such perfunctory argument does not suffice to warrant dismissal of the Plaintiffs' claim at this stage. *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) ("It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to. . .put flesh on its bones."). As such, Knox County has not properly challenged the sufficiency of any claim in the Complaint, and the Court will deny its motion to dismiss the Plaintiffs' Complaint. [R. 5.]

**B**

Turning to Defendant Kenneth Williamson's motion, Williamson moves to dismiss the Plaintiffs' Complaint solely pursuant to Rule 12(b)(6) for failure to state a claim. [R. 6.] To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain sufficient factual allegations to state a claim that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The plaintiff must provide grounds for his requested relief that are more than mere

13

labels and conclusions. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A "formulaic recitation of the elements of cause of action will not do." *Id.*

To review a Rule 12(b)(6) motion, courts construe the complaint "in the light most favorable to the plaintiff" and make "all inferences in favor of the plaintiff." *DirecTV, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007). The Court, however, "need not accept as true legal conclusions or unwarranted factual inferences." *Id*. (quoting *Gregory v. Shelby Cnty.*, 220 F.3d 433, 446 (6th Cir. 2000)). The complaint must enable a court to draw a "reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. To be plausible, a claim need not be probable, but the complaint must show "more than a sheer possibility that a defendant has acted unlawfully." *Id.* A complaint that pleads facts that are consistent with but not demonstrative of the defendant's liability "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 556). The moving party bears the burden of persuading a trial court that the plaintiff fails to state a claim. *Bangura*, 434 F.3d at 498. Against this backdrop, the Court assesses the Plaintiffs' claims against Defendant Kenneth Williamson in turn.

**1**

As to Defendant Kenneth Williamson, the Plaintiffs first bring a claim under 42 U.S.C. §1983 for deprivation of their rights under the equal protection clause of the Fourteenth Amendment to the United States Constitution. [R. 1 at 5.] All §1983 claims must satisfy two elements: (1) deprivation of a constitutional right (2) caused by a person acting under color of state law. *Hester v. Chester Cnty., Tenn.*, 162 F.4th 780, 784 (6th Cir. 2025) (quoting *West v. Atkins*, 487 U.S. 42, 48 (1988)). Williamson asserts that the Plaintiffs have not plausibly alleged either element. [R. 6-1 at 4.] Williamson contends that because he is a private citizen, the

14

"acting under color or state law" element presents "the most direct challenge" to the Plaintiffs' claim. *Id.* The Plaintiffs retort that a private party acts under color of law "when engaged in joint activity with state officials," and further contend that they have plausibly alleged that Williamson engaged in such joint activity. [R. 8 at 11.]

**a**

As a general rule, 42 U.S.C. § 1983 does not reach the conduct of private parties acting in their individual capacities. *Weser v. Goodson*, 965 F.3d 507, 515 (6th Cir. 2010). However, when a private party engages in action that is "fairly attributable to the state," the party may be subject to liability under 42 U.S.C. §1983. *Chapman v. Higbee Co.*, 48 F.3d 192, 195 (6th Cir. 2003) (en banc) (quoting *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 947 (1982)). Three tests are used to determine whether a private party's actions are fairly attributable to the state: (1) the public-function test, (2) the state-compulsion test, and (3) the nexus test. *Nugent v. Spectrum Juvenile Just. Sys.*, 72 F.4th 135, 140 (6th Cir. 2023) (quoting *Carl v. Muskegon Cnty.*, 763 F.3d 592, 595 (6th Cir. 2014)). Additionally, a private party may be considered a state actor if he "engaged in a conspiracy or concerted action with other state actors" by "willfully participat[ing] in joint action with state agents." *Weser*, 965 F.3d at 516.

The Plaintiffs contend that Williamson acted in concert with Knox County to deprive the Plaintiffs of certain rights, thereby alleging a conspiracy theory of state action. [*See* R. 1.] To establish state action under this theory, the Plaintiffs must demonstrate "(1) that there was a single plan; (2) that the alleged coconspirator shared in the general conspiratorial objective, and (3) that an overt act was committed in furtherance of the conspiracy that cause injury to the complainant."[6] *Harcz v. Boucher*, 763 F. App'x 536, 540 (6th Cir. 2019) (quoting *Hooks v.*

---

[6] The pleading standard for a conspiracy sufficient to establish state action is the same as the pleading standard for a 42 U.S.C. §1983 conspiracy generally. *See Marvaso v. Sanchez¸* 971 F.3d 599, 606 (6th Cir.

*Hooks*, 771 F.2d 935, 944 (6th Cir. 1985)). The Sixth Circuit has noted that this pleading standard is "relatively strict" and "vague and conclusory allegations unsupported by material facts will not be sufficient to state such a claim under § 1983." *Fieger v. Cox*, 524 F.3d 770, 776 (6th Cir. 2008); *Spadafore v. Gardner*, 330 F.3d 849, 854 (6th Cir. 2003) (citations omitted). However, "even if a defendant's briefing identifies a more likely alternative explanation for what occurred," at this stage of litigation, "a plaintiff's specific allegations of conspiracy will suffice as long as they are plausible." *Rudd v. City of Norton Shores, Mich.*, 977 F.3d 503, 517 (6th Cir. 2020) (internal citations and quotations omitted).

Williamson contends that the Plaintiffs have not sufficiently alleged either a shared conspiratorial objective or a conspiratorial agreement. [R. 6-1 at 6-8.] In order to plausibly allege a conspiratorial objective, the plaintiff must establish "specific allegations connecting that defendant to those objectives." *Blick v. Ann Arbor Public School Dist.*, 105 F.4th 868, 888 (6th Cir. 2024) (citations omitted). Moreover, the Sixth Circuit has emphasized that the Court must "consider the complaint's allegations against each defendant individually," to determine if each defendant joined in the conspiracy's objectives. *Rudd*, 977 F.3d at 518. However, the Sixth Circuit has also clarified that "[t]he essence of the conspiracy is the agreement to commit an unlawful act." *Cox v. Ruckel*, 2025 WL 2603787, at * 5 (6th Cir. Sept. 9, 2025) (citing *United States v. Wheat*, 988 F.3d 299, 306 (6th Cir. 2021)). Thus, so long at the agreement is present, there is "no requirement that the defendant himself commit the overt act. Any individual who joins the conspiracy can be held liable even if they didn't commit an overt act." *Cox*, 2025 WL 2603787, at *5 (quoting *United States v. Fox*, 134 F.4th 348, 370 (6th Cir. 2025) (per curiam)).

---

2020) (pleading standard for §1983 conspiracy); *Harcz*, 763 F. App'x at 540 (pleading standard for establishing state action).

16

At this stage, the Plaintiffs have plausibly identified a single specific "plan": paving the Road in advance of Judge Lay's planned site inspection. [R. 1 at 3.] The Plaintiffs have also identified a conspiratorial objective: altering the landscape of the property prior to the site inspection for the purpose of depriving the Plaintiffs of their ability to present their case in Knox Circuit Court. *Id.* Further, the Complaint identifies overt acts taken in furtherance of that shared plan, the actual paving of the Road, which the Plaintiffs allege was completed by Knox County, and the bulldozing and grading of portions of the Road and surrounding property, which the Plaintiffs allege was conducted by Williamson himself. *Id.*

As for whether Williamson himself joined in the conspiratorial objectives, the Plaintiffs allege several facts which make such involvement plausible. To provide context, the Plaintiffs first submit that the roadway had not been paved for approximately fifteen years. [R. 8 at 12.] Then, after years of inactivity, the weekend prior to a judicial site inspection, the Road was paved. *Id.* In an effort to demonstrate his familiarity with Knox County officials, Plaintiffs note that Williamson is a retired law enforcement officer. *Id.* at 13. The Plaintiffs also allege that Williamson attended a fiscal court meeting in 2020 to request that the county road designation terminate at his residence. [R. 1 at 2.] Finally, the Plaintiffs allege that Williamson erected a white picket fence at the border of his property during the state court action to create a misleading line of demarcation. *Id.*

Williamson argues that, under the *Noerr-Pennington* doctrine, the Plaintiffs may not assert his attendance at the fiscal court meeting as evidence of his participation in the conspiracy. [R. 6-1 at 7-8.] The *Noerr-Pennington* doctrine generally prevents a party from being held liable for actions protected by the First Amendment. *Knology, Inc. v. Insight Comm'ns Co.*, 393 F.3d 656, 658 (6th Cir. 2004). The Sixth Circuit recently confronted a factually analogous scenario

17

and held that attending a fiscal court meeting falls under the category of protected activity, for purposes of a § 1983 conspiracy.  *Cox*, 2025 WL 2603787, at \*6 (holding that the defendant cannot be held liable for attending a fiscal court meeting because this action was "protected by the first amendment rights to speak freely and to petition the government.").  Thus, Williamson's attendance at the fiscal court meeting cannot qualify as an overt act in furtherance of the conspiracy because "that would amount to imposing liability for a constitutionally protected action."  *Id.*

The inquiry does not end there, however.  The Sixth Circuit in *Cox* went on to explain that, although attendance at a fiscal court meeting could not qualify as an overt act, such attendance could still be considered in the context of whether the defendant joined in the conspiratorial agreement.  *Id.* ("Although speech protected by the First Amendment cannot give rise to *liability* under §1983, it can provide *factual support* for the allegation that the speaker was part of a conspiracy.") (emphasis added).  Accordingly, the Court may consider this fact in determining whether Williamson joined in the conspiracy's plan and objectives.

Williamson also argues that the Plaintiffs' conspiracy argument must fail because they have not identified any specific Knox County officials or agents that joined the conspiracy with Williamson.  [R. 6-1 at 6-7.]  Williamson points to *Blick v. Ann Arbor Public School District* in which the Sixth Circuit noted that, without "identifying specific defendants who joined th[e] conspiracy," the plaintiff "generically alleged that [an] undifferentiated group of 'Defendants' *collectively* conspired to deprive her of rights."  105 F.4th at 888.  Williamson believes that *Blick* deals a fatal blow to the Plaintiffs' conspiracy theory, but the Court reads *Blick* differently.  *Blick* did not hold that a plaintiff must know the identity of and name each defendant at the pleading stage.  Rather, *Blick* stands for the proposition that a plaintiff cannot allege that a collective

18

group of defendants generally conspired with one another without attributing specific actions to specific defendants.

District courts interpreting this portion of *Blick's* holding have generally agreed, narrowing in on the "collective" and "general" nature of a plaintiff's allegations. *See Hill v. City of Detroit*, 2025 WL 3459481, at *11 (E.D. Mich. Dec. 2, 2025) (dismissing a conspiracy claim where the complaint presented a "generalized narrative of conspiracy by 'defendants' collectively. . ."); *Ali v. Townsend*, 2026 WL 1229070, at *6 (W.D. Tenn. May 5, 2026) (dismissing a conspiracy claim where the "Complaint treats the Defendants collectively, and does not contain specific allegations that plausibly show that each defendant agreed to a conspiracy's objectives and joined a single plan."). Conversely, in the instant case, the Plaintiffs do not lump Williamson and the Knox County defendants together and generally allege that they conspired with one another. The Plaintiffs here attribute specific actions to two discrete Defendants. The Court does not believe that the Plaintiffs' failure to name one or more specific Knox County officials or agents should automatically preclude their claim from going forward past the pleading stage.

In sum, the Plaintiffs have alleged a single plan, they have alleged that Williamson shared in the general conspiratorial objective, and they have alleged that overt acts were committed in furtherance of the conspiracy that caused injury to the Plaintiffs. This suffices to allege a conspiracy at the pleading stage. "Allegations alone, even if conclusory or improbably, may suffice for this early stage of litigation." *Novak v. City of Parma*, 932 F.3d 421, 436 (6th Cir. 2019) (holding that where the plaintiff "names the coconspirators, suggests that they came to an agreement, and alleges that they" took action against the plaintiff, the test for conspiracy has been met). Consequently, because the Plaintiffs have plausibly alleged the existence of a

19

conspiracy between Williamson and Knox County, Williamson's conduct is "fairly attributable to the state" and §1983 may reach his actions.

b

Williamson further moves to dismiss the Plaintiffs' Complaint on the grounds that the Plaintiffs have not plausibly alleged the deprivation of any constitutional right. [R. 6-1 at 9-13.] As noted above, the Plaintiffs bring an equal protection claim against Williamson under the Fourteenth Amendment to the United States Constitution. [R. 1 at 5.] To state a claim for violation of the equal protection clause, the Plaintiffs must plausibly allege that they have been treated "disparately as compared to similarly situated persons and that such disparate treatment either burdens a fundamental right, targets a suspect class, or has no rational basis." *Courser v. Allard*, 969 F.3d 604, 617 (6th Cir. 2020) (internal citations omitted). Although the Plaintiffs have not alleged that they belong to a suspect class, or that Williamson has burdened a fundamental right, the Supreme Court has recognized that the core protection of the Equal Protection Clause allows plaintiffs to bring an equal protection claim on a "class-of-one" theory. *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). "[T]he class-of-one theory of equal protection. . .presupposes that like individuals should be treated alike, and that to treat them differently is to classify them in a way that must survive at least rationality review. . ." *Engquist v. Oregon Dep't of Agric.*, 553 U.S. 591, 605 (2008).

Under this "class-of-one" theory, a defendant may be liable for intentionally treating a plaintiff "differently from others similarly situated [when] there is no rational basis for the difference in treatment."[7] *Id.* The Supreme Court has reasoned that this theory comports with

---

[7] "Class-of-*one*" is somewhat of a misnomer because there is "no requirement that the challenged government action single out one solitary person." *Franks v. Rubitschun*, 312 F. App'x 764, 766 n.2 (6th Cir. 2009). Thus, the fact that multiple Plaintiffs bring this claim does not change the calculus.

20

"the purpose of the equal protection clause" which is to "secure every person within the State's jurisdiction against intentional and arbitrary discrimination. . ." *Id.* Accordingly, in order to plausibly allege an equal protection violation under this theory, the Plaintiffs must demonstrate that they are similarly situated to another landowner, here Williamson, and that the Defendants treated the Plaintiffs differently than Williamson, with no rational basis.[8] *Anders v. Cuevas*, 984 F.3d 1166, 1180 (6th Cir. 2021).

To satisfy the threshold inquiry, the Plaintiffs "must allege that [they] and other individuals who were treated differently were similarly situated in all material respects." *Aldridge v. City of Memphis*, 404 F. App'x 29, 42 (6th Cir. 2010) (quoting *Taylor Acquisitions, LLC v. City of Taylor*, 313 F. App'x 826, 836 (6th Cir. 2009)). However, "courts should not demand exact correlation, but should instead seek relevant similarity." *Perry v. McGinnis*, 209 F.3d 597, 601 (6th Cir. 2001). Furthermore, "the degree to which others are viewed as similarly situated depends substantially on the facts and context of the case." *Tuscola Wind III, LLC v. Almer Charter Twp.*, 327 F.Supp.3d 1028, 1047 (E.D. Mich. 2018) (quoting *Jennings v. City of Stillwater*, 383 F.3d 1199, 1214 (10th Cir. 2004)). Consequently, "determining whether individuals are similarly situated is generally a factual issue for the jury." *Id.* (quoting *Loesel v. City of Frankenmuth*, 692 F.3d 452, 462 (6th Cir. 2012)).

Williamson contends that the "similarly situated" inquiry poses an insurmountable barrier to the Plaintiffs' claims because they cannot plausibly allege that they were similarly situated landowners. [R. 6-1 at 10.] In essence, Williamson argues that the Knox Circuit Court has already determined that the Plaintiffs and Williamson are not similarly situated in all material

---

[8] An important distinction is required here. Williamson cannot be liable simply for *receiving* alleged preferential treatment from Knox County. However, where the Plaintiffs have adequately alleged a conspiracy, Williamson may be liable for the acts of co-conspirators—here, Knox County. *See Frenchko v. Monroe*, 160 F.4th 784, 802 (6th Cir. 2025).

respects. *Id.* Specifically, the Knox Circuit Court has held that Williamson's property abuts a County Road, which Knox County has a duty to maintain, and the Plaintiffs' properties do not abut a County Road. *Id.*

Against that backdrop, the Court can quickly dispose of the Plaintiffs' claim that they were treated differently from other "rural property owners whose land abuts county-maintained roads." [R. 8 at 18-19.] As the Knox Circuit Court has already determined, the Plaintiffs themselves are *not* rural property owners whose land abuts county-maintained roads. [R. 5-5.] The Plaintiffs further claim that road maintenance decisions were "structured in a manner that uniquely benefited Williamson and uniquely burdened Plaintiffs in anticipation" of the planned judicial site inspection. *Id.* at 19. Then, the Plaintiffs, without citing any authority for their proposition, claim that at the pleading stage, they are "not required to identify specific comparator landowners by name or produce evidentiary detail." *Id.* Maybe so, but at this stage, the Plaintiffs at the very least must allege sufficient facts that make recovery plausible.

Even if the Plaintiffs could clear the "similarly situated" hurdle, the governmental action at issue clears rational basis review. Although the Plaintiffs claim that rational basis may not be resolved at the Rule 12(b)(6) stage, the Sixth Circuit has held otherwise. *See In re City of Detroit, Mich.*, 841 F.3d 684, 701 (6th Cir. 2016). "To survive a motion to dismiss in the rational basis context, a plaintiff must allege facts sufficient to overcome the presumption of rationality that applies to government classifications." *Id.* (internal citations and quotations omitted). Additionally, in reviewing an equal protection challenge under rational basis, the Court may "hypothesize" a governmental purpose. *Metoyer v. Washtenaw Cnty. Road Comm'n*, 2025 WL 2773126, at *5 (E.D. Mich. Sept. 29, 2025) (quoting *Haves v. City of Miami*, 52 F.3d 918, 922 (11th Cir. 1995)).

This "presumption of rationality" places a heavy burden on the Plaintiffs to "negate, via alleged facts, 'every conceivable basis which might support [the disparate treatment].'" *Asher v. Clay Cnty. Bd. of Educ.*, 585 F.Supp.3d 947, 972 (E.D. Ky. 2002) (quoting *F.C.C. v. Beach Communications*, 508 U.S. 307, 315 (1993)); see also *Andrews, Trustee of Gloria M. Andrews Trust Dated April 23, 1998 v. City of Mentor, Ohio*, 11 F.4th 462, 477 (6th Cir. 2021) ("The upshot of *City of Detroit* is that in order to overcome the presumption of rationality. . .a plaintiff must plead facts that plausibly negate the defendant's likely non-discriminatory reasons for the disparate treatment.") (internal quotations omitted).

For example, a Plaintiff may overcome the "presumption of rationality" at the pleading stage by alleging facts that negate the most likely non-discriminatory reasons for the governmental action. *Id.* (citing *Bower v. Vill. of Mount Sterling*, 44 F. App'x 670, 675-76 (6th Cir. 2002)). Here, the most obvious "conceivable" reason for Knox County paving the portion of the road which abuts Williamson's property and not paving the road which abuts the Plaintiffs' properties stems from the county road designation. The Knox Circuit Court determined that the county road designation terminated at Williamson's property, meaning that Knox County has an obligation to pave this road, and no obligation to pave the road in front of the Plaintiffs' property. *See* Ky. Rev. Stat. 178.010(1)(b).

The Plaintiffs' attempt to overcome the presumption of rationality falls well short of negating this basis. In their Complaint, the Plaintiffs allege that "Williamson enjoyed governmental favoritism without rational justification," and further allege that the Defendants "intentionally treated Plaintiffs differently from Williamson. . .without rational basis." [R. 1 at 4-5.] However, the decision to pave the Road fronting Williamson's property was supported by Knox County's statutory duty to maintain the Road which suffices to make such a distinction.

23

Further, the Court is not charged with inquiring into Knox County's true intent in paving the Road, so long as there are plausible reasons for its actions. *Hamma v. I.N.S.*, 78 F.3d 233, 237 (6th Cir. 1996) (quoting *United States R.R. Retirement Bd. v. Fritz*, 449 U.S. 166, 179 (1980)).

Courts tend to view "class-of-one" claims with caution because "unless carefully circumscribed" such claims "could effectively provide a federal cause of action for review of almost every executive and administrative decision made by state actors." *Loesel v. City of Frankenmuth*, 692 F.3d 452, 461-62 (6th Cir. 2012) (quoting *Jennings v. City of Stillwater*, 383 F.3d 1199, 1210-11 (10th Cir. 2004)). Because the Plaintiffs have not alleged any facts "to overcome any of these [conceivable] explanations," their Complaint contains only legal conclusions "not entitled to the assumption of truth." *City of Detroit*, 841 F.3d at 701 (citing *Iqbal*, 556 U.S. at 678). Thus, Plaintiffs' equal protection claim against Williamson must be dismissed.

**2**

Although the Plaintiffs do not premise their Complaint on a due process deprivation, they nonetheless assert in their Response to Williamson's Motion that the Complaint supports such a claim. [R. 8 at 20-22.] Essentially, Plaintiffs contend that the Defendants actions have deprived them of "access to the courts" by altering the landscape of the site at issue in litigation prior to the planned judicial site inspection.[9] *Id.* The Supreme Court has indeed recognized the existence of a constitutional right of access to the courts for plaintiffs with a nonfrivolous legal claim. *See Christopher v. Harbury*, 536 U.S. 403, 415 n.12 (2002) (collecting cases). The Sixth Circuit has recognized that this right finds support in the Due Process Clause of the Fourteenth

---

[9] Generally, plaintiffs may not avoid the dismissal of their claims by asserting new theories of recovery in response to a 12(b)(6) motion to dismiss. *Waskul v. Washtenaw Cnty. Cmty. Mental Health*, 979 F.3d 426, 440 (6th Cir. 2020) (internal quotations and citation omitted). However, because the "access to courts" claim can be easily decided on other grounds, the Court will briefly address this new claim.

Amendment, the First Amendment, the Equal Protection Clause, and the Privileges and Immunities Clause of Article IV. *Swekel v. City of River Rouge*, 119 F.3d 1259, 1261-62 (1997); see also *Kelso v. City of Toledo*, 77 F. App'x 826, 832 (6th Cir. 2003) ("[T]he Constitution protects a citizen's right of access to the courts."). The Sixth Circuit has further held that the right to access the courts may be violated if a plaintiff is physically blocked from entering a courthouse or if the defendant's action "renders a plaintiff's state court remedy ineffective." *Swekel*, 119 F.3d at 1262.

When a plaintiff brings an "access to courts" claim, the Court must first determine whether the claimed deprivation occurred pre- or post-filing. *Id.* at 1263. "When the abuse transpires post-filing, the aggrieved party is already in court and that court usually can address the abuse, and thus, an access to courts claim typically will not be viable." *Id.* In the instant case, the Plaintiffs assert actions taken by the Defendants post-filing as the basis for their claim. However, the Plaintiffs have not explained why the Knox Circuit Court cannot remedy this harm, nor have the Plaintiffs definitely established that any harm has occurred. *Joyce v. Mavromatis*, 783 F.2d 56 (6th Cir. 1986) ("[T]here is no reason to believe that a [state] court and jury would be unavailable and would not do justice between the parties."). Further, with the state court action still pending, the Court has no indication that the Plaintiffs' state court claims have been affected at all by the Defendants' actions. *Swekel*, 119 F.3d at 1264 ("A plaintiff cannot merely guess that a state court remedy will be ineffective because of a defendant's actions."). Thus, the Plaintiffs are unable to demonstrate that they have been denied "meaningful" and "effective" access to the courts because the deprivation of such access is merely speculation at this juncture. As such, to the extent the Plaintiffs have properly raised an "access to the courts" claim against Williamson, this claim will be dismissed.

25

**3**

Finally, Williamson moves to dismiss Count III of the Complaint which alleges a violation of 42 U.S.C. § 1985(3) for conspiracy to deny equal protection. [R. 6-1 at 13-14.] A 42 U.S.C. § 1985(3) cause of action for conspiracy requires that the Plaintiffs prove four elements: "(1) the existence of a conspiracy; (2) the purpose of the conspiracy was to deprive any person or class of persons the equal protection or equal privileges and immunities of the law; (3) an act in furtherance of the conspiracy; and (4) injury or deprivation of a federally protected right." *Royal Oak Entm't, LLC v. City of Royal Oak, Mich.*, 205 F. App'x 389, 399 (6th Cir. 2006). Further, to prove a §1985(3) conspiracy, the Plaintiffs must plausibly allege that the conspiracy was motivated by animus against a particular constitutionally protected class. *Volunteer Med. Clinic, Inc. v. Operation Rescue*, 948 F.2d 218, 224 (6th Cir. 1991). Classes that are entitled to § 1985 protection are those "discrete and insular minorities that receive special protection under the Equal Protection Clause because of inherent personal characteristics." *Id.*

As Williamson notes, Plaintiffs have not alleged that they are members of any protected class, nor do they allege that the Defendants' actions were motivated by animus against any constitutionally protected characteristic. Presumably recognizing this reality, the Plaintiffs do not devote any of their Response to fighting this conclusion. The Plaintiffs merely assert that they have been denied equal protection under a "class-of-one" theory, which the Sixth Circuit has held cannot serve as the basis for a §1985(3) conspiracy claim. *Royal Oak Entm't*, 205 F. App'x at 399 (quoting *McGee v. Schoolcraft Cmty. Coll.*, 167 F. App'x 429, 436 (6th Cir. 2006) ("[E]ven if these Plaintiffs can claim to be a 'class of one,' their membership in that class is not entitled to the kind of special protection which would make §1985(3) applicable to Plaintiffs' claim."). Thus, because the Plaintiffs have not premised their §1985(3) claim on the basis of any

26

inherent personal characteristic or based upon membership in a class traditionally subject to special protection under the Equal Protection Clause, Count III of the Plaintiffs' Complaint will be dismissed as to Williamson.

### III

Accordingly, and the Court being otherwise sufficiently advised, it is hereby **ORDERED** as follows:

1. Defendant Knox County, Kentucky's Motion to Dismiss **[R. 5]** is **DENIED**; and

2. Defendant Kenneth Williamson's Motion to Dismiss **[R. 6]** is **GRANTED**.

This the 9th day of July, 2026.

Gregory F. Van Tatenhove
United States District Judge

27